UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:23-cv-117-KDB

| ACQUILLA BOOZE CAIN, JR., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| MATTHEW OSBORNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant Matthew Osborne's Motion for Summary Judgment [Doc. 38]. Also pending is the Plaintiff's *pro se* "Motion for Property All Personal Property to be Released to the Plaintiff" [Doc. 46].

**I.   BACKGROUND**

The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Iredell County Detention Center ("ICDC").[1] The Plaintiff's unverified Complaint[2] passed initial review against Matthew Osborne, a lieutenant at the ICDC, for using excessive force in the ICDC medical area following a fight between the Plaintiff and another inmate. [Doc. 1: Complaint; Doc. 16: Order on Initial Review]. The Court exercised supplemental jurisdiction over Plaintiff's claim for North Carolina assault and battery that was based on the same conduct. [Id.]. The Plaintiff seeks damages. [Doc. 1: Complaint at 5].

Defendant Osborne filed a Motion for Summary Judgment [Doc. 38: MSJ] and supporting exhibits [Doc. 39-1 through 39-6: MSJ Exhibits]. Thereafter, the Court entered an Order in

---

[1] The Plaintiff's current address of record is North Carolina Central Prison. [See Docs. 45, 46].

[2] Because the Complaint is not verified, it will not be considered in the summary judgment analysis.

accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 40: Roseboro Order]. The Plaintiff filed a Response and supporting exhibits.[3] [Doc. 41: MSJ Response; Docs. 41-1, 41-2: Plaintiff's Exhibits]. The Defendant filed a Reply and a Supplemental Affidavit [Doc. 42: MSJ Reply; Doc. 42-1: Supp. Affid.], the Plaintiff filed a Surreply [Doc. 43: Surreply], and the Defendant filed a Supplemental Memorandum and additional evidence [Doc. 44: Supp. MSJ; Doc. 44-1: Supp. Affid. of Dawn Joines; Doc. 44-2: Medical Records], to which the Plaintiff has not responded. These matters are ripe for disposition.

Also pending is a Motion in which the Plaintiff asks the Court to order the ICDC to send all of his personal property to the Central Prison where the Plaintiff is presently being housed as a safekeeper.[4] [See Doc. 46].

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

---

[3] Among these exhibits is an unnotarized "Affidavit" that purports to be "duly sworn" by the Plaintiff. [Doc. 41-1]. The Defendant treats the "Affidavit" as though it is verified and the Court will do the same for purposes of this discussion. See 28 U.S.C. § 1746. However, the Affidavit will be disregarded insofar as it includes speculation and legal argument, addresses claims that did not pass initial review, and attempts to assert new claims that are not properly before the Court. [See, e.g., Doc. 41-1: Plaintiff's Affid. at 3, 7-9, 14 (referring to "lies," asserting that Plaintiff received deliberately indifferent medical care, and seeking the dismissal of his pending criminal charges)]; see generally Fed. R. Civ. P. 15(a) (addressing the amendment of complaints); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (unsupported speculation is not sufficient to defeat a summary judgment motion).

[4] The Court finds that it is appropriate to address this Motion without waiting for the response time to expire.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the

3

Case 5:23-cv-00117-KDB     Document 47     Filed 02/18/25     Page 3 of 13

> nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

### III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff as the non-moving party, shows the following.

In April 2023, the Plaintiff was a pretrial detainee at the ICDC on charges including assault by strangulation inflicting serious injury, assault on a female, two counts of habitual misdemeanor assault, communicating threats, and false imprisonment. [Doc. 39-3: MSJ Ex at 9-13 (Iredell County Sheriff's Office printout)]. His criminal history includes multiple prior convictions for offenses such as assault, communicating threats, and resisting a public officer. [Id.].

On April 11, 2023, the Plaintiff had a fight with another inmate. [Doc. 41-1: Plaintiff's Affid. at 2]. Lieutenant Osborne and Officers Sid-Allan Canter and Freddrick Sidberry[5] responded to a radio call for assistance with the fight. [Doc. 39-3: Osborne Affid. at ¶¶ 6-9]. It was later determined from a review of cell block video footage that the Plaintiff was the aggressor. [Doc. 41-1: Plaintiff's Affid. at 2; Doc. 39-3: Osborne Affid. at ¶ 20].

The Plaintiff's hands were cuffed in front of his body and Osborne, Canter, and Sidberry escorted him to see medical providers. [Doc. 39-3: Osborne Affid. at ¶ 10; Doc. 39-5: Sidberry

---

[5] Sidberry (also spelled "Sidbury" by Plaintiff) and Canter are not presently defendants in this case. [<u>See</u> Doc. 16].

4

Decl. at ¶ 8]. No video footage from the medical areas exists because ICDC does not have video cameras there for health privacy reasons. [Doc. 42-1: Osborne Supp. Affid. at ¶ 7].

While the Plaintiff and officers were waiting for medical providers to examine him, the Plaintiff overheard Nurses Dawn Joines[6] and Amy Toler[7] disparaging him. [Doc. 41-1: Plaintiff's Affid. at 4]. The Plaintiff became hostile towards Nurse Joines and cursed at her. [Doc. 39-3: Osborne Affid. at ¶ 12; Doc. 39-5: Sidberry Decl. at ¶ 10]. Lieutenant Osborne escorted the Plaintiff into the examination room for a blood draw by Nurse Toler.[8] [Id.; id. at ¶ 11]. The Plaintiff cursed and said that he would not let a nurse stick him with a dirty needle. [Id. at ¶¶ 12-14; Id. at ¶ 11; Doc. 39-6: Toler Affid. at ¶ 7; Doc. 41-1: Plaintiff's Affid. at 5]. The Plaintiff told Osborne that he wanted to refuse all medical care; Osborne "ignor[ed] [Plaintiff's] commands to leave medical" while both nurses yelled at him. [Doc. 41-1: Plaintiff's Affid. at 5]. Nurse Toler cursed and left the medical examination room and Plaintiff cursed back at her. [Id.; see Doc. 39-6: Toler Decl. at ¶ 8]. Lieutenant Osborne made a fist and drew his hand back while he was standing to Plaintiff's left, Officer Sidberry was at Plaintiff's right, and Officer Canter was by the door. [Doc. 41-1: Plaintiff's Affid. at 6]. Lieutenant Osborne believed that the Plaintiff was acting aggressively. [Doc. 39-3: Osborne Affid. at ¶ 15]. He attempted to "hip toss" Plaintiff to the ground to prevent the Plaintiff from reaching the doorway,[9] and to ensure the safety of all individuals

---

[6] Nurse Joines (also spelled "Jones" by Plaintiff) is not a defendant in this case.

[7] Nurse Toler (also spelled "Toller" by Plaintiff) is not presently a defendant in this case. [See Doc. 16].

[8] The Plaintiff contends that video footage from the medical area supports his version of events and that Osborne purposefully took him into an examination room where there is a camera "blind spot." [Doc. 41-1: Plaintiff's Affid. at 4-5]. As discussed *supra*, the Defendants have forecast evidence that the entire medical area lacks video cameras; the Plaintiff has not filed any video footage and the Court need not accept his speculation that such exists. See Scott, 550 U.S. at 380.

[9] The Court accepts the Plaintiff's contentions that Nurse Toler had already exited the examination room at this point, and that he did not lunge at her. [Doc. 41-1: Plaintiff's Affid. at 6. Cf. Doc. 39-3: Osborne Affid. at ¶ 14; Doc. 39-6: Toler Decl. at ¶ 8; Doc. 39-5: Sidberry Decl. at ¶ 12; Doc. 39-4: Canter Decl. at ¶ 12].

5

nearby. [Id. at ¶¶ 15-17]. The Plaintiff felt somebody pull the back of his jumpsuit and he was slammed backwards, hitting his head and right shoulder on the floor. [Doc. 41-1: Plaintiff's Affid. at 6; see Doc. 39-5: Sidberry Decl. at ¶ 13 (Sidberry grabbed Plaintiff's uniform)]. Something in Plaintiff's right arm tightened and made a popping sound. [Doc. 41-1: Plaintiff's Affid. at 6-7]. Lieutenant Osborne landed on his right side under the Plaintiff. [Doc. 39-3: Osborne Affid. at ¶ 16]. Osborne felt his shoulder tighten and pop, his left arm went numb, and he felt like he could not move his shoulder. [Id.]. Officer Canter restrained Plaintiff's legs by separating them; Officer Sidberry put his elbow on Plaintiff's chest; and Lieutenant Osborne held Plaintiff down on his left side. [Doc. 41-1: Plaintiff's Affid. at 7; see Doc. 39-4: Canter Decl. at ¶ 13]. Officers verbally directed the Plaintiff to stop resisting and the Plaintiff complied after a few seconds. [Doc. 39-4: Canter Decl. at ¶ 14; Doc. 39-3: Osborne Affid. at ¶ 18; Doc. 39-5: Sidberry Decl. at ¶ 15]. The Plaintiff had "physical pain and injury" to his head, shoulder, and groin. [Doc. 41-1: Plaintiff's Affid. at 13]. However, the Plaintiff told officers that he was not injured and he refused medical treatment. [Doc. 39-3: Osborne Affid. at ¶¶ 18-19; Doc. 39-4: Canter Dec. at ¶ 16]. He was escorted out of the medical area without further incident. [Id.; id.].

The Plaintiff was charged in North Carolina court with assault on a government official (Lieutenant Osborne), assault on a female by a male over the age of 18 years (Nurse Toler), and simple assault (another inmate). [Doc. 39-3: Osborne Affid. at ¶ 22; Doc. 39-3: MSJ Ex at 17-21].

On April 13, 2023, the Plaintiff asked to go to medical for injuries to his head, groin, and neck. [Doc. 41-1: Plaintiff's Affid. at 7; Doc. 39-3: Osborne Affid. at ¶ 23; Doc. 39-3: MSJ Ex at 24-25 (medical progress notes)]. The Plaintiff was taken to medical where no trauma to those areas was noted. [Doc. 39-3: Osborne Affid. at ¶ 23; Doc. 39-3: MSJ Ex at 24-25]. The Plaintiff cursed at medical providers and he was removed from the medical area. [Id.; id.]. On April 14, 2023, the

6

Case 5:23-cv-00117-KDB   Document 47   Filed 02/18/25   Page 6 of 13

Plaintiff was taken to medical for complaints including a knot on the side of his head and lower back pain. [Id.; id.]. No trauma or bruising was noted on Plaintiff's head and Plaintiff agreed that his lower backpain was an ongoing issue. [Id.; id.]. On April 20, 2023, the Plaintiff was brought to medical for complaints of pain to the back of his head and pain to his right groin. [Id.; id.]. No trauma or bruising was seen on his head and the groin issue was noted that he had an "old/chronic" injury from bullet fragments. [Id.; id.]. On June 3, 2024, the Plaintiff came to the medical department, complaining that his right shoulder was dislocating during incline pushups. [Doc. 44-1: Joines Supp. Affid. at ¶ 4; see Doc. 44-1: Supp. MSJ Ex]. The Plaintiff received x-rays which showed no fractures or dislocation.[10] [Id. at ¶ 5; id.].

ICDC policy provides that inmates must file a grievance within 72 hours of an alleged incident, unless the matter relates to the Prison Rape Elimination Act. [Doc. 39-1: Seene[11] Affid. at ¶¶ 3, 5; see Doc. 39-1: MSJ Ex at 6-12 (ICDC Policy 8.03, Inmate Grievance System)]. The on-duty shift lieutenant must respond to a grievance within five working days. [Doc. 39-1: Seene Affid. at ¶ 7; id.]. If the inmate is not satisfied with the disposition, he may submit an appeal through the kiosk system within two working days; the appeal is then investigated and resolved by the operations captain within five working days.[12] [Id. at ¶ 8; id.]. If the inmate is still not satisfied, he can submit a written appeal to the assistant administrator within two working days. [Id. at ¶ 9; id.]. The assistant administrator then investigates and resolves the appeal within seven working days. [Id.; id.]. The assistant administrator's decision is considered final for purposes of exhausting

---

[10] The Court need not accept the Plaintiff's speculation that shoulder "x-rays will show fracher [sic] out of place…," as it is blatantly contradicted by the medical records. [Doc. 41-1: Plaintiff's Affid. at 7]; see Scott, 550 U.S. at 380.

[11] ICDC Operations Captain Eric Seene is not a defendant in this case.

[12] The Plaintiff contends that Captain Seene's affidavit in this regard contains "lies." [Doc. 41-1: Plaintiff's Affid. at 10 ("You cannot use no kiosk system at all but visit and he dose no investigate at all I done with lies after lies")] (errors uncorrected). The Court need not accept these contentions that are internally inconsistent, conclusory, and contrary to detention center policy. [See Id.; Doc. 39-1: MSJ Ex at 6-12].

an inmate's administrative remedies. [Doc. 39-1: MSJ Ex at 9].

The Plaintiff filed four pages of grievances during the relevant time, only two of which – the grievances dated April 13 and May 25, 2023 – address the April 11 use of force.[13] [Doc. 39-1: Seene Affid. at ¶ 11; MSJ Ex at 14-17 (April 13, 2023 grievance alleging assault and battery; April 20, 2023 grievance alleging medical negligence; May 4, 2023 grievance alleging discrimination; May 25, 2023 grievance alleging assault and battery)]. On April 13, 2023 the Plaintiff filed a grievance alleging that deputies used excessive force. [Id. at ¶ 12; Doc. 39-1: MSJ Ex at 14]. Captain Seene responded that same day that all video and reports would be preserved and reviewed; the Plaintiff did not appeal. [Id.; id.]. On May 25, 2023, the Plaintiff filed a second grievance alleging that deputies used excessive force. [Id. at ¶ 13; id. at 17]. Seene responded the next day that all reports by officers and medical staff were reviewed and that Plaintiff had been charged with crimes related to the incident. [Id.; id.]. The Plaintiff did not appeal. [Doc. 39-1: Seene Affid. at ¶ 13]. The Plaintiff also wrote to Bert Connolly, Captain Seene, and Major Morrison, and his father spoke to Darren Campbell.[14] [Doc. 41-1: Plaintiff's Affid. at 15].

## IV. DISCUSSION

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this

---

[13] The Plaintiff admits that he "ha[s] a copy of all inmate grievance form[s]," however, he has only filed the April 13 and May 25 grievances with the Court. [Doc. 41-1: Plaintiff's Affid. at 15-16; Doc. 41-2: Affid. Ex at 10-11]. The Court need not accept Plaintiff's unsupported characterization of the grievances' content and resolution. [See Doc. 7-2: "Order to File a Sworn Statement" at 2-3 ("I done 4 grievance form only 1 was answered by administrative"); see also Doc. 41-1: Plaintiff's Affid. at 9-10 ("… Capt. Seene would not respond or answer my grievances within the time of 72 hours lazy ass lies giving me all this run around….")]; see Scott, 550 U.S. at 380.

[14] None of these individuals are defendants in this case.

8

Case 5:23-cv-00117-KDB    Document 47    Filed 02/18/25    Page 8 of 13

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Inmates are required to "properly" exhaust administrative remedies in accordance with ARP. Woodford, 548 U.S. at 90.

Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

The ICDC has established a three-step procedure governing submission and review of inmate grievances. [See Doc. 39-1: MSJ Ex at 9]. An inmate does not exhaust his administrative remedies until he completes all three steps of that procedure. [Id.]. The forecast evidence shows

9

that the Plaintiff filed two grievances complaining about the use of excessive force on April 11, 2023, but that the Plaintiff did not file any appeals from the responses to those grievances. The Plaintiff has not forecast any evidence that he exhausted his administrative remedies with regards to his excessive force claim, or that the ARP was unavailable to him. Accordingly, the Defendant's Motion for Summary Judgment will be granted on this ground.[15]

B.     **Excessive Force**

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

The forecast of evidence in the light most favorable to the Plaintiff demonstrates that: Defendant Osborne believed that the Plaintiff was acting aggressively and that hands-on force was needed to ensure safety and restore order; Osborne attempted to hip-toss the Plaintiff while Siberry grabbed Plaintiff's uniform, resulting in the Plaintiff striking the ground with his head and shoulder; Canter restrained the Plaintiff's legs, which aggravated an old groin injury; the Plaintiff was briefly restrained on the ground until he complied with officers' orders; and the Plaintiff refused medical attention and showed no signs of trauma. A reasonable officer could have

---

[15] The failure to exhaust administrative remedies ordinarily results in dismissal without prejudice. However, the Plaintiff has also failed to establish the existence of a genuine dispute of material fact regarding the merit of his § 1983 excessive force claim as discussed *infra*. Therefore, summary judgment would be granted with prejudice even if the Plaintiff's claim were administratively exhausted.

10

concluded that Osborne's use of physical force was required to regain control over the aggressive Plaintiff and to restore order. See, e.g., Bulluck v. Martin, 1:20-cv-292, 2022 WL 179142 (W.D.N.C. Jan. 19, 2022) (granting summary judgment to officers who brought pretrial detainee to the ground to regain control after the detainee was aggressive, combative, and attempted to assault an officer); White v. Todd, 1:20-cv-803, 2022 WL 2541921 (E.D. Va. July 7, 2022) (granting summary judgment to officers who *inter alia* pushed a pretrial detainee up against a wall to get his hands behind his back because the detainee posed a security threat). There is no forecast of evidence that Defendant Osborne's limited use of force was objectively unreasonable under the circumstances. It shows, at most, that Defendant Osborne's belief that a use of force was required was mistaken, and/or that he inadvertently used more force than was intended. See Short v. Hartman, 87 F.4th 593, 611 ("it is still not enough for the plaintiff to allege that the defendant acted negligently or accidentally failed to do right by the detainee"). Accordingly, Defendant Osborne will be granted summary judgment on Plaintiff's excessive force claim.

### C. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir.

11

2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that the Defendant violated his constitutional rights, the Defendant is entitled to qualified immunity. As such, summary judgment for the Defendant would also be proper on this ground.

### D.     Supplemental Jurisdiction

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims that were based on the same incidents as the § 1983 excessive force claim that passed initial review. [See Doc. 16: Order on Initial Review at 5].

As discussed *supra*, the related § 1983 excessive force claim has been dismissed. The Plaintiff's North Carolina claims that are based on the same conduct likewise fail. See, e.g., Njang v. Montgomery Cnty., Md., 279 F. App'x 209, 216 (4th Cir. 2008) (recognizing that "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence"); Wilcoxson v. Painter, 2016 WL 866327, at *10 (E.D.N.C. March 3, 2016) ("[w]here a law enforcement officer's use of force was reasonable for the purposes of finding qualified immunity to a § 1983 excessive force claim, it is fatal to the Plaintiff's state law tort claims"). Accordingly, the Defendant's Motion for Summary Judgment is granted on the Plaintiff's North Carolina assault and battery claims.

### E.     Motion for Property Release

Finally, the Plaintiff has filed a *pro se* "Motion for Property...." in which he asks the Court to compel the IDCD to forward his personal property to him at the NCDAC. [Doc. 46]. This Motion is not properly before the Court insofar as it addresses matters that are unrelated to the § 1983 claims at issue. See generally Fed. R. Civ. P. 65 (explaining who may be bound by an injunction); see, e.g., Chenevert v. Kanode, 2022 WL 3021143 (W.D. Va. July 29, 2022) (denying

12

a preliminary injunction where the injunctive relief that the plaintiff sought was not related to the claims in the lawsuit). Accordingly, the "Motion for Property…" will be denied.

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment is granted, this action is dismissed with prejudice, and the Plaintiff's "Motion for Property" is denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 38] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

The Plaintiff's *pro se* "Motion for Property All Personal Property to be Released to the Plaintiff" [Doc. 46] is **DENIED**.

**IT IS SO ORDERED.**

Signed: February 16, 2025

Kenneth D. Bell
United States District Judge